IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

---

JOSE ENCARNACION and CECILIA
MORAN, Individually and as Husband
And Wife,

    Plaintiffs,

v.                                                    No. 2:19-cv-02745-MSN-tmp

HEARTLAND EXPRESS, INC. OF IOWA
d/b/a HEARTLAND EXPRESS and
STEVEN SMITH,

    Defendants.

---

**ORDER DENYING DEFENDANTS' MOTION IN LIMINE TO EXCLUDE
TESTIMONY AND OPINIONS OF SANTO STEPHEN BIFULCO, M.D., CLCP AT
TRIAL**

---

This cause comes before the Court on Defendants' Motion in Limine to Exclude Testimony and Opinions of Santo Stephen BiFulco, M.D., CLCP at Trial filed on May 20, 2021. (ECF No. 49.) Plaintiffs filed their response in opposition on June 2, 2021. (ECF No. 50.) For the reasons below, Defendants' motion is **DENIED**.

## Background

This case arises out of an auto-accident. On May 23, 2018, Plaintiff Jose Encarnacion was traveling down I-40, a busy thoroughfare in Memphis, Tennessee, when he slowed his vehicle in response to the stalled traffic in front of him. (ECF No. 26 at PageID 119.) As Plaintiff Encarnacion came to a stop, Defendant Steven Smith allegedly rear-ended his vehicle. (*Id.* at PageID 120.) The force of the impact from Defendant Smith's vehicle propelled Plaintiff

Encarnacion's vehicle into the backend of an 18-wheeler. (*Id.*) Plaintiff Encarnacion has been left with "post-concussive syndrome and neck and back pain" among other ailments as a result. (*Id.*)

Plaintiffs commenced this present suit on October 31, 2019. (ECF No. 1.) Plaintiffs assert theories of negligence and negligence *per se* against Defendant Smith. (ECF No. 26 at PageID 120–21.) Further, Plaintiffs assert that Defendant Heartland Express Inc. of Iowa d/b/a Heartland Express is liable for the acts of Defendant Smith under a theory of *respondeat superior*. (*Id.* at PageID 120–21.) Plaintiffs also assert separate negligence claims against Defendant Heartland Express. (*Id.* at PageID 126–27.)

Pursuant to the Court's Scheduling Order, (ECF Nos. 21, 36, and 47), Plaintiffs filed their expert disclosures on September 30, 2020. (ECF No. 32.) Plaintiffs identified Santo Steven BiFulco, M.D., as an expert in their disclosures. (*Id.*; ECF No. 31 at PageID 156.) Plaintiffs intend to have Dr. BiFulco testify to Plaintiff Encarnacion's future medical care along with its attendant costs. (*Id.* at PageID 156–57.)

Defendants seek to exclude Dr. BiFulco's testimony on the grounds that (1) Dr. BiFulco is unqualified to provide expert testimony concerning Plaintiff Encarnacion's future medical needs and that (2) his testimony is unreliable. (ECF No. 49 at PageID 347–48.) Plaintiffs naturally oppose Defendants' request to exclude Dr. BiFulco's testimony. (*See generally* ECF No. 50.)

**Standard of Review**

Federal Rule of Evidence 702 provides the criteria to determine the admissibility of proffered expert testimony and states:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient

facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702. This Rule reflects the standards first enunciated in *Daubert v. Merrell Dow Pharms.*, 509 U.S. 579 (1993) and later expounded upon in *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999). *See* Fed. R. Evid. 702 advisory cmte. notes, 2000 Amend. ("In *Daubert* the court charged trial judges with the responsibility of acting as gatekeepers to exclude unreliable expert testimony, and the court in *Kumho* clarified that this gatekeeper function applies to all expert testimony, not just testing based in science.").

Under Rule 702, a proposed expert's opinion is admissible if the opinion satisfies three requirements: (1) the witness must be qualified by "knowledge, skill, experience, training, or education"; (2) the testimony must be relevant and assist 'the trier of fact to understand the evidence or to determine a fact in issue"; and (3) the testimony must be reliable. Fed. R. Evid. 702; *In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 528–29 (6th Cir. 2008). "[A]ny step that renders the analysis unreliable . . . renders the expert's testimony inadmissible." Fed. R. Evid. 702 advisory cmte. notes, 2000 Amend (internal quotation marks omitted). However, "rejection of expert testimony is the exception, rather than the rule." *Id.*; *see also In re Scrap Metal Antitrust Litig.*, 527 F.3d at 530.

Generally, if an expert's opinion amounts to "mere guess or speculation," it should be excluded. *United States v. L.E. Cooke Co.*, 991 F.2d 336, 342 (6th Cir. 1993). "An expert's opinion, where based on assumed facts, must find some support for those assumptions in the record. However, mere 'weaknesses in the factual basis of an expert witness' opinion . . . bear on the weight of the evidence rather than on its admissibility.'" *McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 801 (6th Cir. 2000) (quoting *L.E. Cooke Co.*, 991 F.2d at 342) (internal citations

3

omitted). The Supreme Court in *Daubert* made clear that "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596.

The gatekeeper inquiry under Rule 702 and *Daubert* is a flexible determination. *Kumho Tire*, 526 U.S. at 157–58. *Daubert* provides a nonexclusive checklist for trial courts in evaluating the reliability of expert testimony that must be tailored to the facts of a particular case. *Id.* at 150 (citing *Daubert*, 509 U.S. at 593). Those factors include: (1) whether the methodology can or has been tested; (2) whether the given theory or technique has been published or been the subject of peer review; (3) whether a known error rate exists; and (4) whether the theory or method enjoys general acceptance in the particular field. *Daubert*, 509 U.S. at 593–94. The *Daubert* factors "are not dispositive in every case" and should be applied only "where they are reasonable measures of the reliability of expert testimony." *Gross v. Comm'r.*, 272 F.3d 333, 339 (6th Cir. 2001). Ultimately, "[i]t is the proponent of the testimony that must establish its admissibility by a preponderance of proof." *Nelson v. Tenn. Gas Pipeline Co.*, 243 F.3d 244, 251 (6th Cir. 2001) (citing *Daubert*, 509 U.S. at 592 n.10). With this framework in mind, the Court will now turn to Defendants' motion.

## **Analysis**

Defendants argue that the Court should exclude Dr. BiFulco's testimony for three reasons: (1) Dr. BiFulco is not qualified to testify as an expert; (2) his opinion is unreliable; and (3) his opinion would not assist a trier-of-fact.[1] (ECF No. 49-1 at PageID 352.) The Court will address these arguments in turn.

---

1. Defendants also bring to the Court's attention the late disclosure of a supplemental report authored by Dr. BiFulco and request exclusion of the same due to its untimeliness. (ECF No. 49-1 at PageID 351–52.) Plaintiffs assert in their response that they will only rely on Dr.

4

1. **Dr. BiFulco's Qualifications**

Federal Rule of Evidence 702 requires that an expert be qualified by "knowledge, skill, experience, training, or education[.]" Defendants seek to undermine Dr. BiFulco's qualifications by drawing attention to the fact that Dr. BiFulco is not board certified in his chosen field of physiatry.[2] (ECF No. 49-1 at PageID 355.) Next, Defendants point out that Dr. BiFulco has never performed a surgical operation nor does he currently enjoy hospital privileges. (*Id.*) Finally, Defendants note that "[n]early 100 percent" of Dr. BiFulco's life care planning services stem from litigation. (*Id.*)

Plaintiffs counter Defendants' argument by pointing to Dr. BiFulco's vast experience acquired over his thirty (30) years of practice. (ECF No. 50 at PageID 482–83.) Dr. BiFulco has treated hundreds of patients who have suffered "acute, chronic, and catastrophic injuries and illnesses." (*Id.*; ECF No. 50-1 at PageID 489.) Additionally, Plaintiffs argue that, while not board certified as a physiatrist, Dr. BiFulco is a board-certified life care planner. (ECF No. 50 at PageID 482–83.; ECF No. 49-2 at PageID 367.)

The Court finds that Dr. BiFulco has the requisite knowledge, training, experience, and education to qualify him as an expert. *See* Fed. R. Evid. 702. First, Dr. BiFulco has over thirty (30) years of experience with patients suffering from acute injuries like the ones from which Plaintiff Encarnacion allegedly suffers. (ECF No. 50-1 at PageID 489.) Further, he has received

---

BiFulco's initial expert report. (ECF No. 50 at PageID 478–79 n.1.) In light of Plaintiffs' concession to rely **only** on Dr. BiFulco's initial report authored on September 25, 2020, Defendants' request is **DENIED AS MOOT**.

2. At his deposition, Dr. BiFulco explained that physiatry "consists of three areas; orthopedic medicine, not surgery; neurology, as it pertains to rehabilitation and painful or disabling conditions; and physical therapy or the use of physical agents to treat patients that have painful or disabling conditions or conditions that affect function or gait, meaning your ability to walk." (ECF No. 49-2 at PageID 365.)

various accreditations, specialty training, and certificates that supplement his understanding and experience. (*Id.* at PageID 491.) And, while not board certified as a physiatrist, he is board certified as a life care planner—the area to which his testimony will relate. (ECF No. 49-2 at PageID 367.) Accordingly, the Court finds Dr. BiFulco qualified. *See Queen v. W.I.C., Inc.*, No.14-CV-519-DRH-SCW, 2017 WL 3872180, at *4 (S.D.Ill. Sept. 5, 2017) (addressing the qualifications of Dr. BiFulco).[3]

2. **The Reliability of Dr. BiFulco's Methodology**

In addition to possessing the requisite qualifications, an expert's opinions must be "the product of reliable principles and methods." Fed. R. Evid. 702(c); *see also Daubert*, 509 U.S. at 589 ("[U]nder the Rules the trial judge must ensure that any and all scientific testimony or evidence admitted is not only relevant, **but reliable**.") (emphasis added). The Court's analysis is "solely on principles and methodology, not on the conclusions that they generate." *Daubert*, 509 U.S. at 595. The Court has "considerable leeway" in determining "whether particular expert testimony is reliable." *Kumho*, 526 U.S. at 152.

Here, Defendants assert that Dr. BiFulco's opinion is unreliable for several reasons. Defendants first argue that Dr. BiFulco did not consult with several of Plaintiff Encarnacion's treating physicians when authoring his report. (ECF No. 49-1 at PageID 354.) This lack of conferral by Dr. BiFulco is in "direct contradiction" with the "reliable methodology" on which Dr. BiFulco purports to rely in crafting his report. (*Id.*) Building on that, outside of the recommendations by Dr. Cooper (one of Plaintiff Encarnacion's treating physicians), the future

---

3. Also, as one last note, Defendants' arguments, if accepted, would have sweeping implications and severely limit the field of those who could render expert testimony. *See Mannino v. Int'l Mfg. Co.*, 650 F.2d 846, 850 (6th Cir. 1981) ("[A] proposed expert should not be required to satisfy an overly narrow test of his own qualifications.").

care and services identified by Dr. BiFulco have not been recommended by Plaintiff Encarnacion's treating physicians. (ECF No. 49-1 at PageID 354.)

Additionally, Defendants point out several facts that Dr. BiFulco failed to consider when authoring his report. For example, Dr. BiFulco did not consider what injuries Plaintiff Encarnacion could have sustained from an auto-accident that occurred one-month prior to the incident at issue here; nor was Dr. BiFulco aware of another auto-accident involving Plaintiff Encarnacion that occurred several months after. (*Id.* at PageID 355.) Further, Dr. BiFulco could not confirm whether he had seen all of Plaintiff Encarnacion's medical records. (*Id.*) Defendants also take issue with Dr. BiFulco's arguably limited examination of Plaintiff Encarnacion. (*Id.*)

In conjunction with Defendants' arguments, the Court also notes that the two most recent court decisions concerning Dr. BiFulco both found his methodology unreliable. *See Rios v. Ramage*, No. 2:19-cv-02602-HLT, 2021 WL 2255050, at *7–*9 (D. Kan. June 3, 2021); *Queen*, 2017 WL 3872180, at *4–*5. Admittedly, these holdings are not binding on this Court but do cause the Court to pause. Further, Dr. BiFulco's life care plan services arise almost entirely in the context of litigation. (*See* ECF No. 49-2 at PageID 401); *see also Johnson v. Manitowoc Boom Trucks, Inc.*, 484 F.3d 426, 434 (6th Cir. 2007) (generally expressing that "expert testimony prepared solely for purposes of litigation, as opposed to testimony flowing naturally from an expert's line of scientific research or technical work, should be viewed with some caution"). With these things in mind, the Court turns to whether Dr. BiFulco's opinion is sufficiently reliable. The Court finds that it is.

Take first Defendants' argument concerning Dr. BiFulco's methodology. Although Defendants assert that Dr. BiFulco's failure to consult with Plaintiff Encarnacion's physicians "is in direct contradiction with the 'reliable methodology'" employed by reasonable life care planners,

(ECF No. 49-1 at PageID 354), Defendants fail to flesh out this argument. Defendants cite no support for the proposition that Dr. BiFulco needed to confer with Plaintiff Encarnacion's physicians to render a reliable opinion. More importantly, Defendants do not actually address the methodology employed by Dr. BiFulco in reaching his opinion.[4]

Instead, Defendants focus on what Dr. BiFulco did and did not consider when authoring his report such as Dr. BiFulco's ignorance of two other auto-accidents involving Plaintiff Encarnacion. (ECF No. 49-1 at PageID 354–55.) These attacks implicate the "weaknesses in the factual basis" of Dr. BiFulco's testimony. *McLean*, 224 F.3d at 801. Instead of exclusion, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596; *see also In re Scrap Metal Antitrust Litig.*, 527 F.3d at 530 ("[W]e will generally permit testimony based on allegedly erroneous facts when there is some support for those facts in the record."); *Rios*, 2021 WL 2255050, at *7 ("But questions about the sources of an expert's opinion go to the weight to be assigned to that opinion, rather than admissibility, and are for the trier of fact to determine.").

On whether Dr. BiFulco's opinion is based on sufficient facts, the key question to answer is whether the purported testimony "amounts to mere guess or speculation" or if it has a "reasonable factual basis." *United States v. Ramer*, 883 F.3d 659, 680 (6th Cir. 2018) (quoting *L.E. Cooke Co.*, 991 F.2d at 342); *In re Scrap Metal Antitrust Litig.*, 527 F.3d at 530. Here, the Court finds that Dr. BiFulco's opinion is based on a "reasonable factual basis." First, Dr. BiFulco based his opinion on telehealth phone calls with Plaintiff Encarnacion and his wife. (ECF No. 49-

---

4. The Court notes that Dr. BiFulco testified at his deposition that the methods utilized by him in crafting his life care plans are generally accepted in the scientific community, and his life care plans have also undergone peer-review. (ECF No. 49-2 at PageID 453–54.)

2 at PageID 412; ECF No. 50-2 at PageID 497.) Additionally, Dr. BiFulco conducted a physical examination of Plaintiff Encarnacion on September 16, 2020—which is just nine (9) days prior to the date his report was authored. (ECF No. 50-2 at PageID 497, 499.) He also reviewed over seven hundred (700) pages of material submitted to him by Plaintiffs' counsel in addition to sending out correspondence to Plaintiffs' treating physicians. (*Id.* at PageID 497.) He incorporated into his report the recommendations from Dr. Cooper. (*Id.* at PageID 497, 511); *contra Queen*, 2017 WL 3872180, at *4 ("Dr. BiFulco's recommended care plan suggests multiple treatments that are neither supported by Queen's medical records, nor recommended by Queen's treating physicians.").

Further, the Court finds that future care and services identified by Dr. BiFulco has some connection to the evidence in the record. For example, Dr. BiFulco's report states that Plaintiff Encarnacion will need housekeeping services for the rest of life. (ECF No. 50-2 at PageID 510.) Defendants contest this and assert that there is no record of Plaintiff Encarnacion needing this service. (ECF No. 49 at PageID 347.) Dr. BiFulco's report, however, states that Plaintiff Encarnacion is unable to do household chores due to severe pain. (ECF No. 50-2 at PageID 497.) Further, Plaintiff Encarnacion had already been receiving some of these services that Dr. BiFulco identified in his report. (*Id.* at PageID 498, 520, 523); *contra Queen*, 2017 WL 3872180, at *4. Accordingly, the Court finds Dr. BiFulco's report sufficiently reliable. Any concerns Defendants may harbor can be properly addressed through cross-examination.

3. **The Relevancy of Dr. BiFulco's Testimony.**

Finally, in addition to the above requirements, the proffered expert testimony must "help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702; *In re Scrap Metal Antitrust Litig.*, 527 F.3d at 529 ("[T]estimony must be relevant, meaning that it

will assist the trier of fact to understand the evidence or to determine a fact in issue." (internal quotations omitted)).  The Supreme Court has described this requirement as speaking to whether the proffered expert testimony "fits" with the issues in the case.  *Daubert*, 509 U.S. at 591; *see also Greenwell v. Boatwright*, 184 F.3d 492, 496 (6th Cir. 1999) ("The relevance requirement ensures that there is a 'fit' between the testimony and the issue to be resolved by the trial.").

 Defendants do not seriously contest that Dr. BiFulco's testimony is relevant.  Indeed, a major issue left to be resolved centers around the long-term cost and effect of Plaintiff Encarnacion's injuries.  In light of that, the Court finds that Dr. BiFulco's testimony is relevant and would assist the trier of fact in determining Plaintiff Encarnacion's future medical needs.

## **Conclusion**

For the reasons above, the Court **DENIES** Defendants' motion.  The Court finds that Dr. BiFulco is qualified to offer his testimony concerning Plaintiff Encarnacion's future medical care and the attendant costs.

**IT IS SO ORDERED**, this the 12th day of July, 2021.

*s/ Mark Norris*
MARK S. NORRIS
UNITED STATES DISTRICT JUDGE